**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| LESTER S. SCHWARTZ, *as Trust Protector of the Wellin Family 2009 Irrevocable Trust*,<br><br>Plaintiff,<br><br>vs.<br><br>PETER J. WELLIN, *et. al.*,<br><br>Defendants. | No. 2:13-cv-3595-DCN<br><br><br><br>**ORDER** |

      This matter is before the court on plaintiff Lester Schwartz's motion to extend the state court-ordered temporary restraining order ("TRO") and for a preliminary injunction. For the reasons stated below, the motion is denied.

## I.  BACKGROUND

      As the parties are very familiar with the facts of this case, the court dispenses with a lengthy recitation of them.  Friendship Management, LLC is the 1.1% owner and sole general partner of Friendship Partners, LP.  The Wellin Family 2009 Irrevocable Trust ("the Trust") holds the remaining 98.9% interest in Friendship Partners.  On December 1, 2013, Cynthia Wellin Plum, as manager of Friendship Management, directed the liquidation of Friendship Partners.  According to its liquidation plan, Friendship Partners intended to distribute the proceeds of its liquidated assets to its partnership on a pro rata basis.  The Trust would therefore receive 98.9% of Friendship Partners' assets.

      Keith Wellin's three adult children, as the Trust's individual trustees, make up the Trust's distribution committee.  On December 1, 2013, with notice of Friendship

1

Partners' liquidation plan, the Wellin children executed written consents to the distribution of Trust assets.  Specifically, they directed the Trust to retain enough money to satisfy the note held by their father.  At the same time, the Wellin children authorized the equal distribution of the balance of the Trust's principal to themselves as the Trust's named beneficiaries.

On December 5, 2013, Brown Brothers Harriman, the newly-installed corporate trustee for the Trust, resigned its position as corporate trustee.

On December 6, 2013, Friendship Partners sold all its assets, including the 896 Class A Berkshire Hathaway common shares that Keith Wellin had contributed to the partnership.  Friendship Partners then distributed all its assets to the members of its partnership, Friendship Management and the Trust.  Upon receiving the bulk of Friendship Partners' assets, the Trust set aside about $52 million to pay off the note held by Keith Wellin.  The remaining money, about $95 million, was distributed equally among the Wellin children.

On December 17, 2013, attorney Lester S. Schwartz, in his capacity as trust protector of the Trust, filed a complaint in Charleston County Probate Court against Keith Wellin, his three adult children, Friendship Management, and Friendship Partners.[1]  In his complaint, plaintiff asserts that the Wellin children have "frustrated the intent and purposes of the Trust," which was to provide for Keith's grandchildren as well as his children, by liquidating Friendship Partners' assets and putting most of the proceeds into their own bank accounts.  Plaintiff's complaint asserts the following six causes of action:

---

[1] On January 3, 2013, plaintiff voluntarily dismissed Friendship Partners and Keith Wellin from the case without prejudice.  As a result, there is complete diversity among the parties.

    (i)      Breach of fiduciary duty (as to the three Wellin children);

    (ii)     Conversion (as to the three Wellin children);

    (iii)    Removal of trustees (as to the three Wellin children);

    (iv)    Restitution (as to all defendants);

    (v)     Recovery of attorneys' fees (as to the three Wellin children);

    (vi)    Temporary restraining order, and temporary and permanent injunction (as to all defendants).

On December 20, 2013, Charleston County Probate Judge Irvin Condon issued an ex parte TRO that enjoined the Wellin children from "disposing of or exercising any control over any of the cash, funds, or proceeds realized by the sale of the 896 Class A Berkshire Hathaway common shares" without plaintiff's express written consent or upon court order. The state court's TRO also stated that it "does not preclude the investing by the Trustees of the restrained assets consistent with their duties as prudent Trustees. The trust funds need to be traceable and accountable to the Trust Protector and this Court."

On December 27, 2013, the Wellin children, Friendship Management, and Friendship Partners removed the case to this court. On December 30, 2013, plaintiff filed an emergency motion to extend the state court's TRO and for a preliminary injunction. The matter has been fully briefed and the parties presented oral argument at a hearing held on December 31, 2013.

## II. STANDARDS

The court evaluates a request for a temporary restraining order under the same rubric as a request for a preliminary injunction. See Virginia v. Kelly, 29 F.3d 145, 147 (4th Cir. 1004) (applying preliminary injunction standard to a request for a temporary restraining order); Smith v. S. Carolina Election Comm'n, 874 F. Supp. 2d 483, 497

(D.S.C. 2012) (same). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); see Munaf v. Geren, 553 U.S. 674, 689-90 (2008) ("A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." (internal citation and quotation marks omitted)); In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003) ("[P]reliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly."), abrogated on other grounds by eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).

### III.   DISCUSSION

Plaintiff asks the court to impose a further TRO and a preliminary injunction that feature the same restrictions imposed by the state court TRO. This proposed injunction seeks to prevent the Wellin defendants from:

> being able to sell, trade, negotiate, gift, alienate, hide, convert or otherwise dispose of the proceeds of the sale of the 896 Class A Berkshire Hathaway common shares transferred to Friendship Partners, LP by Keith S. Wellin in 2003 or from participating in, authorizing, or allowing such transactions without the express, written, and notarized consent of the Plaintiff or further order of this court.[2]

Pl.'s Mot. for Prelim. Inj. Ex. 1 at 2.

---

[2] The injunction sought resembles the injunction unsuccessfully sought in a related case, Wellin v. Wellin, No. 13-cv-01831. In that case, Keith Wellin sought to keep his three children

> from being able to sell, trade, negotiate, gift, or otherwise dispose of any of the 896 Class A Berkshire Hathaway common shares transferred to Friendship Partners, LP . . . . [and/or] the 98.90% limited partnership interest in Friendship Partners, LP . . . without the express, written, and notarized consent of the Plaintiff or the current holder of his durable power of attorney.

Pl.'s Mot. for TRO, Wellin v. Wellin, No. 13-cv-01831, ECF No. 5 at 1.

4

A party seeking a preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits: (2) that he is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter, 555 F.3d at 320. A court considering whether to impose a preliminary injunction must separately consider each of the four Winter factors. Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013).

As an initial matter, plaintiff contends that he need not meet the four-pronged preliminary injunction standard described by the Supreme Court and the Fourth Circuit. Specifically, he argues that "[W]here an injunction explicitly authorized by state law is sought in a diversity case, the Supreme Court's decision in Erie R.R. v. Tompkins, 304 U.S. 64 (1938), mandates that state standards governing the issuance of preliminary injunctions be followed." Pl.'s Reply to Mot. for Prelim. Inj. 3 (emphasis added). To support his argument, plaintiff relies on Environmental Defense Fund v. Lamphier, 714 F.2d 331 (4th Cir. 1983). In Lamphier, the defendants appealed the entry of a permanent injunction entered after the district court found them liable for violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq. The Fourth Circuit affirmed, explaining that RCRA's enforcement provision "explicitly calls for the judicial issuance of injunctions to coerce compliance with the Act's requirements. Where a statute authorizes injunctive relief for its enforcement, plaintiffs need not plead and prove irreparable injury." Lamphier, 714 F.2d at 338. Plaintiff argues that since South Dakota law states that "the court may order such appropriate relief as may be necessary to protect the trust property or the interests of the beneficiaries," S.D. Codified Laws § 55-3-20.1 (2013), under Lamphier, this statutory language exempts him from having to

5

prove irreparable injury because it amounts to the explicit authorization of injunctive relief.

Plaintiff's reasoning fails. The Lamphier court dealt exclusively with the post-trial imposition of a permanent injunction, and did not address whether its holding governed the evaluation of preliminary injunctions or TROs. Indeed, one of the cases cited in plaintiff's reply distinguishes between permanent and preliminary injunctions. Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules, 837 F.2d 171, 172 (4th Cir. 1988) (explaining that Lamphier's ruling applies to the imposition of permanent injunctions and invoking the Fourth Circuit's preliminary injunction test while evaluating the trial court's denial of a preliminary injunction).[3] Indeed, the Fourth Circuit has very recently explained that "courts considering whether to impose preliminary injunctions must separately consider each Winter factor." Pashby, 709 F.3d at 321. To agree with plaintiff on this issue would be to ignore the clear, current teachings of this circuit.

Even if Lamphier did apply to the case at hand, plaintiff's argument would still fail because the South Dakota trust law that plaintiff has invoked does not expressly authorize court-ordered injunctive relief. Rather, the statute simply states that a court "may order appropriate relief" to protect trust assets "pending a final decision on a request to remove a trustee." S.D. Codified Laws § 55-3-20.1. This language simply codifies a court's inherent power by reiterating that the court may award appropriate relief to parties before it. Moreover, the South Dakota statute's language is fundamentally different from the statutory language at issue in the cases cited by plaintiff.

---

[3] The other cases cited in plaintiff's reply, Redner's Markets, Inc. v. Joppatowne G.P. Limited Partnership, No. 11-cv-1864, 2013 WL 2903285 (D. Md. June 13, 2013), and E.I. DuPont de Nemours & Co. v. Kolon Industries, Inc., 894 F. Supp. 2d 691 (E.D. Va. 2012) explicitly addressed the entry of permanent, not preliminary, injunctions.

See 42 U.S.C. § 6928 ("[The EPA] Administrator may commence a civil action . . . for appropriate relief, including a temporary or permanent injunction."); Va. Code Ann. § 59.1-337 (West) ("Actual or threatened misappropriation may be enjoined."). The statutes at issue in Lamphier and Kolon Industries expressly authorized injunctive relief. Section 55-3-20.1 does not.

Thus, the court must consider whether plaintiff has demonstrated each of the four Winter factors.[4]

### A. Likelihood of Success on the Merits

Plaintiff first contends that he has demonstrated that he is likely to succeed on the merits of this case because he "has made a sufficient showing that Defendants, as co-trustees, participated in and committed serious breaches of trust and are not serving solely the best interests of all beneficiaries." Pl.'s Reply in Supp. of Mot. for Prelim. Inj. 12.

"Although [the likelihood-of-success] inquiry requires plaintiffs . . . to make a clear showing that they are likely to succeed at trial, plaintiffs need not show a certainty of success." Pashby, 709 F.3d. at 321 (internal citations omitted) (emphasis added). It is not enough if a plaintiff only provides sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss. Torres Adv. Enterp. Solutions LLC v. Mid-Atl. Prof'ls, Inc., No. 12-cv-03679, 2013 WL 531215, at *3 (D. Md. Feb. 8, 2013) (internal citations omitted).

---

[4] The court's analysis would be much the same if it were to employ South Dakota law when evaluating plaintiff's request for a preliminary injunction. When determining whether a preliminary injunction should issue, South Dakota courts consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dacy v. Gors, 471 N.W.2d 576, 579 (S.D. 1991) (quotations omitted).

The parties agree, at least in part, on the facts that underlie this lawsuit. Defendants do not dispute that they liquidated Friendship Partners' assets and, after transferring those assets to the Trust, deposited about $95 million of Trust assets into their own bank accounts. However, the complaint draws further legal conclusions that the court need not credit at this juncture. Specifically, the complaint alleges that defendants' actions breached duties that defendants owed to Friendship Partners and to the Trust's grantor and other beneficiaries. See Compl. ¶¶ 34-36. Plaintiff's assertions do not amount to a clear showing that he is likely to succeed on the merits of his claims. Thus, plaintiff has failed to make the first showing required under Winter.

**B. Irreparable Harm**

At the hearing, plaintiff argued that he has shown that he is likely to suffer irreparable harm if the state court's TRO is dissolved.

The Supreme Court has instructed that

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974) (emphasis in original). Moreover, the Fourth Circuit has explained that "a preliminary injunction is not normally available where the harm at issue can be remedied by money damages." Bethesda Softworks, LLC v. Interplay Entm't Corp., 452 F. App'x 351, 353 (4th Cir. 2011) (citing Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 693-94 (4th Cir. 1994)).

At the hearing, plaintiff admitted that the damages he seeks – the return of $95 million to the trust plus attorneys' fees – are all monetary. Plaintiff's counsel also

8

admitted that the Trust retains the roughly $52 million set aside to pay the amount of the note held by Keith Wellin.  Plaintiff has not even alleged that the Wellin defendants are likely to become insolvent before issues in this case are resolved.  See Hughes, 17 F.3d at 694 (explaining that irreparable harm may be found where the moving party's business will fail absent a preliminary injunction, or where the defendant may become insolvent before damages are awarded).  As a result, plaintiff has not met the second Winter factor.

### C.  Balance of the Equities

Plaintiff next argues that the balance of the equities tips in his favor because defendants have unclean hands and because the injunction would preserve the status quo.

In considering the balance of the equities between the parties, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the relief requested."  Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987)).

The injunction plaintiff seeks would not preserve the status quo.  Rather, it would give plaintiff veto power over the decisions made by defendants in their roles as trustees.  Even if plaintiff is the proper trust protector of the Trust – a proposition that defendants dispute – he seeks a power that the trust protector has never before held.  In addition, defendants fiercely dispute that their actions are anything other than legal and in keeping with the governing provisions of both Friendship Partners and the Trust itself.  Without more, plaintiff has failed to show that defendants have unclean hands.  For these reasons, plaintiff has not made the third showing required under Winter.

### D.  Public Interest

Finally, plaintiff argues that the grant of an injunction would serve the public interest by "maintaining the integrity of trusts and insuring the availability of relief upon final judgment."  Pl.'s Reply at 15.

The Supreme Court has admonished that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of an injunction."  Winter, 555 U.S. at 24.  When other considerations do not weigh meaningfully on this factor, the court can find that the likelihood of success on the merits satisfies the public interest prong of the preliminary injunction test.  Pashby, 709 F.3d at 330.

The public interest does not play a meaningful role in the requested injunction.  Because plaintiff has not clearly shown that he is likely to succeed on the merits of this case, the court finds that he has also not met the fourth requisite Winter factor.

### III.   CONCLUSION

For these reasons, the court **DENIES** plaintiff Lester S. Schwartz's motion to extend the temporary restraining order issued by the state court and for a preliminary injunction, ECF No. 4.  The court also hereby **DISSOLVES** the temporary restraining order that was issued by the state court on December 20, 2013.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 7, 2014**
**Charleston, South Carolina**